**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RONALD MORGAN** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-4574** |
| **ROBERT TANNER, CCE, WARDEN**<br>**24TH JUDICIAL DISTRICT COURT** | **SECTION "H"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Ronald Morgan ("Morgan"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On September 4, 2003, Morgan was indicted by a Grand Jury in Jefferson Parish with one count of aggravated incest and one count of aggravated rape both committed upon his juvenile daughter, D.M.[3]  Morgan entered a plea of not guilty to the charges on September 8, 2003.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3.

[3]St. Rec. Vol. 11 of 13, Indictment, 9/4/03; Grand Jury Return, 9/4/03.

[4]St. Rec. Vol. 11 of 13, Minute Entry, 9/8/03.

The record reflects that, D.M.[5] was Morgan's biological daughter, and for extended periods of time, she lived with Morgan, her sister S.M. (also Morgan's daughter), Morgan's second wife, and Morgan's three step-children.[6]  When D.M. was about ten or eleven years old and in the fourth or fifth grade, they lived on Betty Street in the Marrero projects.  During that time, D.M. slept on a sofa bed with her younger sister, S.M.  Morgan would wake-up D.M. during the night and force her to move to the other sofa.  He would then force D.M. to have simulated sex with him where he would lay atop her and "hump" on her while they were both dressed.  Morgan continued this activity with her for two years every other night, or whenever he wanted, while other people in the home were sleeping.

D.M. would tell her father to stop, but he would say, "[c]ome on, D.M."  He would not stop "humping" her unless he heard someone coming.  D.M. thought her sister saw her father on top of her one night, but when her sister did not get up or do anything, she thought she was mistaken.  As it turns out, S.M., who  was nine or ten at the time, saw her father lying on top of D.M. on the sofa; they both had on clothes.  She wondered why her father was doing that and turned her head back the other way because she did not want to look at that anymore.  When she looked again, she heard the screen door open and her father's wife unexpectedly entered the house.  Her father then jumped up off of D.M. and went outside.  S.M. went back to sleep as if she did not see anything, and she did not think either of them saw her looking.

---

[5]The victim and other family members are identified in the state court opinions and records by initials in order to protect the victim's identity in accordance with Louisiana law.  La. Rev. Stat. Ann. § 46:1844(W)(3); *State v. Polizzi*, 924 So.2d 303, 316 (La. App. 5th Cir. 2006).

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal in Morgan's first direct appeal.  *State v. Morgan*, 948 So.2d 199, 202-06 (La. App. 5th Cir. 2006); St. Rec. Vol. 10 of 13, 5th Cir. Opinion, 06-KA-529, pp. 3-11, 12/12/06.

D.M. eventually left her father's home and went to live with her mother after her fifth grade year.  She completed half of sixth grade while living with her mother and was expelled.  She did not finish school that year.  Instead, her mother sent her to live with her father because she was being disrespectful and rebellious.  D.M. moved back with her father on Burnlee Street in Marrero and repeated the sixth grade while living with him, his wife and her children.  S.M. was no longer living with Morgan.  D.M. stayed there for two more years.

During that time, Morgan forced D.M. to have sexual intercourse with him throughout the two years she stayed with him.  D.M. would return home from school between 2:00 p.m. and 3:00 p.m. and her father also got off of work between 3:00 p.m. and 4:00 p.m.  His wife did not get off of work until 7:00 p.m.  Morgan would say to D.M. "[c]ome here, D.M.; come on let's do it before somebody get home."  This occurred every other day or night, and it would happen in the living room, in his bedroom, or in her stepbrother's bedroom where they could see who was about to walk in the front door.  At one point, Morgan wanted to put D.M. on birth control pills, but her mother, C.A., refused to allow because D.M. was only fourteen years old at the time.

D.M. would try to avoid having sex with her father.  She would run into the bathroom and lock herself inside.  However, Morgan would open the bathroom door with a kitchen knife.  She would lie and tell him she had her period.  She also would wrestle with him or kick him when he tried to take off her clothes, and she would tell him to stop and leave her alone.  She tried to resist, but her father was a heavy man and his weight would pin her down.  If she ran or hid, Morgan would tell her she would be punished, or she would not be able to talk on the phone, go to the movies, or go outside.  However, D.M. never got punished because every time her father wanted to have sex with her, he had it.  D.M. was afraid he would hurt her if she did not give in to his demands.

The last time her father had sex with her, it was on or about July 11, 2003, on the morning of a wedding in which her father participated.  She spent the night before with her cousin at the home of her aunt, Morgan's sister, K.H.  Morgan picked her up from K.H.'s house on the morning of the wedding.  He drove D.M. to his house on the pretense that he had something to talk to her about.  While D.M. was alone with her father at his house that morning, he told her "[c]ome on D.M., let's do it so we can go."  They had sex on the living room floor.  Morgan then took her to pick up his wedding clothes and other errands before taking her to her cousin's house.

Either the day of the wedding or right after it, D.M. spoke to her mother, C.A., on the telephone and told C.A. that she did not want to live with her father any longer.  When C.A. asked her why, D.M. began to cry and told C.A. that Morgan had been having sex with her.  C.A. picked up D.M. and went to K.H.'s house to call the police to make a complaint.

Morgan repeatedly tried to see or talk to D.M. while they were at K.H.'s house.  C.A. would not allow it.  Jefferson Parish Sheriff's Office ("JPSO") Deputy Tracey Wine responded to C.A.'s call.  When she approached the residence, she saw Morgan, who appeared to be nervous, and several other people standing outside.  She went inside and spoke with D.M. and C.A. in a back bedroom.  D.M. told the Deputy that her father had raped her at around 10:00 a.m. before the wedding.  D.M. told her that she did not tell anyone before because her father had a bad temper and she was scared of what he might do.  D.M. was crying, very scared, and almost hysterical.  When Deputy Wine went outside to talk to Morgan, he was gone.

During the interview, however, Morgan called C.A. several times wanting to know why Deputy Wine was there and what D.M. was telling them.  C.A. lied to Morgan and told him that she was tired of the problems with D.M. and was going to have her placed in a juvenile home, something

the two of them had threatened to do.  Morgan asked her not to send D.M. away and instead to let D.M. continue to live with him.

After speaking with D.M. and C.A., Deputy Wine notified the sergeant on duty and JPSO Detective Michael Cummings, who arrived and spoke to D.M. and C.A.  Detective Cummings also took an audio-taped statement from D.M.  On August 20, 2003, D.M. was examined by Dr. Merrimer Porales at Children's Hospital in connection with the case.

Morgan waived his right to a jury and proceeded to trial before a judge on January 25, 2005.[7] The Trial Court found Morgan guilty as charged of aggravated incest and guilty of the lesser offense of forcible rape.[8]  On July 11, 2005, the Trial Court sentenced Morgan to serve concurrent terms of ten (10) years in prison at hard labor for aggravated incest and twenty (20) years in prison at hard labor for forcible rape.[9]  The State also filed a multiple bill to which he entered a plea of not guilty.[10]

At a hearing held on October 24, 2005, the Trial Court denied Morgan's motion to quash the multiple bill and adjudicated Morgan to be a third felony offender.[11]  On November 16, 2005, the Court vacated the original sentences and sentenced Morgan as a third offender to serve concurrent sentences of forty (40) years on each count at hard labor without benefit of parole, probation, or

---

[7]St. Rec. Vol. 11 of 13, Trial Minutes, 1/25/05; St. Rec. Vol. 2 of 13, Trial Transcript, 1/25/05; Hearing Transcript, p. 26 (jury waiver), 1/20/05; St. Rec. Vol. 3 of 13, Trial Transcript (continued), 1/25/05.

[8]*Id.*

[9]St. Rec. Vol. 10 of 13, Sentencing Minutes, 7/11/05; St. Rec. Vol. 3 of 13, Sentencing Transcript, p. 5, 7/11/05.

[10]St. Rec. Vol. 10 of 13, Minute Entry, 7/11/05; Multiple Bill, 7/11/05; St. Rec. Vol. 3 of 13, Sentencing Transcript, 7/11/05.

[11]St. Rec. Vol. 10 of 13, Minute Entry, 10/24/05; Motion to Quash, 10/24/05; St. Rec. Vol. 3 of 13, Multiple Bill Hearing Transcript, 10/24/05.

suspension of sentence.[12]  The Court also denied Morgan's motions for post-verdict judgment of acquittal and to quash the multiple bill.[13]

On direct appeal, Morgan's appointed counsel asserted two errors:[14] (1) the evidence was insufficient to support the verdict; and (2) the Trial Court erred in finding Morgan to be a third felony offender.  The Louisiana Fifth Circuit affirmed Morgan's conviction and multiple offender adjudication.[15]  The Court, however, found numerous errors on the record, including the Trial Court's failure to rule on the counsel-filed motion for new trial filed June 27, 2005, advise Morgan of his multiple offender rights, advise Morgan of the delays for seeking post-conviction relief, notify Morgan of the sex offender registration requirements, and make findings in compliance with the applicable restitution statute.  The Court vacated Morgan's sentence and remanded the matter for ruling on the motion for new trial, for re-sentencing, and to make the required notifications.

The Trial Court held a hearing on February 28, 2007, at which the Court set aside the multiple offender sentence which reinstated the original sentence of ten (10) years in prison at hard labor for aggravated incest and twenty (20) years in prison at hard labor for forcible rape.[16]  The Court also advised Morgan of the sex offender registration requirements and appellate and post-conviction delays.

---

[12]St. Rec. Vol. 10 of 13, Minute Entry, 11/16/05; St. Rec. Vol. 3 of 13, Sentencing Transcript, 11/16/05.

[13]*Id.*; St. Rec. Vol. 10 of 13, Motion for Post-Verdict Judgment of Acquittal, 11/6/05; Motion to Quash, 11/6/05; *see also*, Trial Court Order, 12/6/05.

[14]St. Rec. Vol. 3 of 13, Appeal Brief, 2006-KA-0529, 8/14/06.

[15]*Morgan*, 948 So.2d at 199; St. Rec. Vol. 10 of 13, 5th Cir. Opinion, 06-KA-529, 12/12/06.

[16]St. Rec. Vol. 10 of 13, Minute Entry, 2/28/07; St. Rec. Vol. 4 of 13, Hearing Transcript, 2/28/07.

On May 30, 2007, the Trial Court denied a *pro se* motion for new trial which it believed to be the one referenced by the appellate court in the remand order.[17]  At a hearing held on June 6, 2007, the Trial Court recognized that the Louisiana Fifth Circuit had already affirmed Morgan's adjudication as a third felony offender.[18]  The Court vacated the original sentences and sentenced Morgan as a third offender to serve concurrent sentences of forty (40) years on each count at hard labor without benefit of parole, probation, or suspension of sentence.[19]  The Court also complied with the other sentencing and notice directives from the Louisiana Fifth Circuit.

In his second appeal, Morgan's appointed counsel argued that the Trial Court erred in denying the motion for new trial because of insufficient evidence.[20]  On March 11, 2008, the Louisiana Fifth Circuit found that the Trial Court failed to rule on the correct motion for new trial before re-sentencing Morgan.[21]  As such, the Court again vacated Morgan's sentences and remanded the matter for the Trial Court to rule on the counsel-filed motion for new trial filed June 27, 2005.

At a hearing held on October 3, 2008, the Trial Court denied the motion for new trial and resentenced Morgan to his original sentences but to be served consecutively.[22]  After waiver of legal delays, the Court vacated the sentences and sentenced Morgan as a third felony offender to serve forty (40) years in prison for forcible rape at hard labor without benefit of parole, probation, or

---

[17]St. Rec. Vol. 4 of 13, Minute Entry, 5/30/07; Hearing Transcript, 5/30/07.

[18]St. Rec. Vol. 4 of 13, Minute Entry, 6/6/07; Re-sentencing Transcript, 6/6/07.

[19]*Id.*

[20]St. Rec. Vol. 4 of 13, Appeal Brief, 2007-KA-0943, 12/10/07.

[21]*State v. Morgan*, 982 So.2d 172 (La. App. 5th Cir. 2008); St. Rec. Vol. 4 of 13, 5th Cir. Opinion, 07-KA-943, 3/11/08.

[22]St. Rec. Vol. 10 of 13, Re-sentencing Minutes, 10/3/08; St. Rec. Vol. 5 of 13, Re-sentencing Transcript, 10/3/08.

suspension of sentence and to serve a consecutive sentence of ten (10) years in prison for aggravated incest at hard labor and without benefit of parole, probation, or suspension of sentence. The Court also advised Morgan of the delays for seeking an appeal and post-conviction relief. The Court also denied Morgan's motion to reconsider the sentences.[23]

In the third appeal, Morgan's appointed counsel asserted three errors:[24] (1) the Trial Court erred by increasing Morgan's sentences on October 3, 2008 to consecutive sentences; (2) the Trial Court imposed a sentence inconsistent with the habitual offender statute; and (3) the Trial Court erred in denying the motion to reconsider the sentence without apparent consideration of the merits. On May 26, 2009, the Louisiana Fifth Circuit found that the Trial Court erred as a matter of law in denying the motion to reconsider, failed to provide reasons for the increased sentences, imposed an illegally lenient sentence for aggravated incest, and erred in addressing the early release benefits applicable to each sentence.[25] The Court vacated Morgan's sentences and remanded the matter for another re-sentencing.

On July 10, 2009, the Trial Court sentenced Morgan to serve consecutive sentences of ten (10) years in prison at hard labor for aggravated incest and twenty (20) years in prison at hard labor for forcible rape, noting its reasons in support of the decision to run the sentences consecutively.[26] The Court thereafter vacated the sentences and re-sentenced Morgan as a third felony offender to serve forty (40) years in prison for forcible rape at hard labor without benefit of probation or

---

[23]St. Rec. Vol. 10 of 13, Trial Court Order, 10/28/08; Motion to Reconsider Sentence, 10/21/08.

[24]St. Rec. Vol. 5 of 13, Appeal Brief, 08-KA-1299, 1/12/09.

[25]*State v. Morgan*, 15 So.3d 1026 (La. App. 5th Cir. 2009); St. Rec. Vol. 8 of 13, 5th Cir. Opinion, 08-KA-1299, 5/26/09.

[26]St. Rec. Vol. 10 of 13, Re-sentencing Minutes, 7/10/09; St. Rec. Vol. 6 of 13, Re-sentencing Transcript, 7/10/09.

suspension of sentence and to serve a consecutive sentence of fifteen (15) years in prison for aggravated incest at hard labor and without benefit of probation or suspension of sentence, providing his reasons for running the sentences consecutively.[27]   The Court also advised Morgan of his appellate and post-conviction filing delays.

In his fourth appeal, Morgan's appointed counsel asserted two errors:[28] (1) the Trial Court erred by increasing Morgan's sentences to consecutive sentences; and (2) the Trial Court erred by enhancing both sentences under the multiple bill.  On February 23, 2010, the Louisiana Fifth Circuit found that no merit in the claims raised.[29]  However, the Court determined that the Trial Court erred on the sentence for forcible rape by failing to pronounce that the first two years must be served without benefit of parole.  The Court affirmed the sentence for aggravated incest, vacated the multiple offender sentence for forcible rape, and remanded the matter for re-sentencing on that count.

On March 19, 2010, the Trial Court sentenced Morgan as a third offender to serve forty (40) years in prison for forcible rape at hard labor with the first two years to be served without benefit of parole, probation, or suspension of sentence and the remainder of the sentence to be served without benefit of probation or suspension of sentence.[30]  In addition, although it was affirmed on appeal, the Court vacated the sentence for aggravated incest and re-sentenced Morgan as a multiple offender to serve a consecutive sentence of fifteen (15) years in prison at hard labor and without

---

[27]*Id.*

[28]St. Rec. Vol. 6 of 13, Appeal Brief, 09-KA-694, 9/14/09.

[29]*State v. Morgan*, 34 So.3d 909 (La. App. 5th Cir. 2010); St. Rec. Vol. 8 of 13, 5th Cir. Opinion, 09-KA-694, 2/23/10.

[30]St. Rec. Vol. 10 of 13, Re-sentencing Minutes, 3/19/10; St. Rec. Vol. 7 of 13, Re-sentencing Transcript, 3/19/10.

benefit of probation or suspension of sentence.  The Court also advised Morgan of his appellate and post-conviction delays.

In his fifth and final direct appeal, Morgan's appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding no non-frivolous issues to raise on appeal, and withdrew from the case.[31]  Morgan thereafter filed a *pro se* supplemental brief that the Trial Court erred by imposing an enhanced sentence on both counts that was increased on remand without justification and excessive.[32]  The Louisiana Fifth Circuit found no merit in Morgan's arguments and affirmed the sentences.[33]

The Louisiana Supreme Court denied Morgan's related writ application without stated reasons on October 21, 2011.[34]  His convictions and sentences became final ninety (90) days later, on January 19, 2012, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

---

[31]St. Rec. Vol. 7 of 13, Appeal Brief, 10-KA-416, 6/15/10.

[32]St. Rec. Vol. 7 of 13, *Pro Se* Supplemental Brief, 10-KA-416, 7/26/10.

[33]*State v. Morgan*, 63 So.3d 261 (La. App. 5th Cir. 2011); St. Rec. Vol. 13 of 13, 5th Cir. Opinion, 10-KA-416, 3/29/11.

[34]*State v. Morgan*, 73 So.3d 381 (La. 2011); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2011-KO-0896, 10/21/11; La. S. Ct. Writ Application, 11-KO-896, 5/2/11 (dated 4/26/11); La. S. Ct. Letter, 2011-KO-896, 5/2/11 (showing postal meter 4/28/11).

Before his convictions and sentences were final, Morgan moved the state trial court to provide him with discovery and transcript copies for use in preparing for post-conviction review.[35] The Court denied the discovery motion on January 10, 2012, instructing Morgan to file a public records request with the district attorney's office.[36]  By separate order, the Court also denied the request for transcripts finding that there were no pending proceedings and that Morgan failed to demonstrate a particularized need to entitle him to free copies.[37]  The Court also advised Morgan how to purchase copies of the transcripts.

Morgan submitted an application for post-conviction relief to the Trial Court on January 13, 2012, in which he argued claims of ineffective assistance of counsel and improper denial of his request for transcripts.[38]  After receiving additional briefing from the District Attorney and Morgan, the Trial Court denied Morgan's application on July 11, 2012.[39]  The Court held that the ineffective assistance of counsel claims were conclusory, without merit under *Strickland v. Washington*, 446 U.S. 668 (1984), and otherwise inappropriate for post-conviction review under La. Code Crim. P. art. 930.3 as based on the insufficiency of the evidence.  The Court also determined that he was not entitled to free transcript copies where he failed to raise a cognizable post-conviction claim.  In the alternative, the Court resolved that his claims were without merit.

---

[35]St. Rec. Vol. 8 of 13, Motion for Discovery, 12/8/11; Motion for Production of Trial and Sentencing Transcripts, 12/8/11.

[36]St. Rec. Vol. 8 of 13, Trial Court Order(2), 1/10/12.

[37]St. Rec. Vol. 8 of 13, Trial Court Order, 1/10/12.

[38]St. Rec. Vol. 8 of 13, Uniform Application for Post-Conviction Relief, 1/18/12 (dated 1/13/12).

[39]St. Rec. Vol. 8 of 13, Trial Court Order, 7/11/12; State's Response, 6/1/12l; Opposition to State's Response, 6/18/12; Trial Court Order, 7/31/12.

The Louisiana Fifth Circuit denied Morgan's related writ application on September 14, 2012.[40] In its reasoned opinion, the Court agreed that Morgan failed to indicate a need for his trial and sentencing transcripts. The Court also made the following finding regarding Morgan's ineffective assistance of counsel claims:[41]

> Since Relator's claims of ineffective assistance of counsel are actually claims regarding the sufficiency of the evidence and this Court previously has found that any rational trier of fact could have found that the evidence was sufficient under the *Jackson* [*v. Virginia*, 443 U.S. 307 (1979)] standard to support relator's convictions, we find that Relator's claims should have been denied on that basis.

On March 1, 2013, the Louisiana Supreme Court denied Morgan's related writ application without stated reasons.[42]

## II.    **Federal Petition**

On June 5, 2013, the Clerk of this Court filed Morgan's federal petition for habeas corpus relief in which, under a broad reading, he asserts five grounds for relief:[43] (1) counsel was ineffective when he failed to conduct an "insidious" investigation due to lack of crime scene, lack of DNA testing, lack of physical evidence, and lack of child psychologist testimony; (2) counsel was ineffective when he failed to "vigiously" cross-examine and impeach the victim about her inconsistent testimony; (3) counsel was ineffective when he failed to challenge the probable cause affidavit that was not signed by a magistrate or judge; (4) counsel was ineffective when he failed to object to testimony that was not corroborated by evidence and was circumstantial; and (5) the

---

[40]St. Rec. Vol. 12 of 13, 5th Cir. Order, 12-KH-622, 9/14/12.

[41]*Id.*, at 2.

[42]*State ex rel. Morgan v. State*, 108 So.3d 788 (La. 2013); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2012-KH-2206, 3/1/13; La. S. Ct. Writ Application, 12-KH-2206, 10/11/12 (postal meter 10/8/12, dated 10/8/12); La. S. Ct. Letter, 2012-KH-2206, 10/11/12 (showing postal meter 10/8/12).

[43]Rec. Doc. No. 3.

Trial Court erred in denying his requests for free copies of the sentencing and trial transcripts. Morgan also urges that this Court require the state trial court to hold an evidentiary hearing on his claims.

The State filed an answer and memorandum in opposition to Morgan's petition conceding that the petition was timely filed and that the claims were exhausted in the state courts.[44]  The State argues, however, that the claims are without merit, or fail to present a cognizable federal claim, and that the petition should be dismissed with prejudice.  Morgan filed a reply to the State's opposition restating his position on the merits of the issues raised.[45]

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[46] applies to this petition, which is deemed filed in this Court no later than May 15, 2013.[47]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[44]Rec. Doc. Nos. 12.

[45]Rec. Doc. No. 13.

[46]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[47]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Morgan's federal habeas petition on June 5, 2013, when pauper status was granted.  Morgan dated his signature on the memorandum attached to his original submission to the Court on May 15, 2013.  This is the earliest date appearing in the record on which he could have presented the package of pleadings to the prison officials for mailing to the Court.

"procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that Morgan's petition is timely filed and the claims are exhausted.  The record also does not reflect that any of the claims are in procedural default.  Thus, the Court will address the merits of Morgan's claims.

## IV.    Standards of Review of the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White v. Woodall*, No. 12-794, 2014 WL 1612424, at *8 (U.S. Apr. 23, 2014); *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.  **Evidentiary Hearing Not Warranted**

As an initial matter, the Court considers Morgan's claim that the state trial court erred in denying his post-conviction application without an evidentiary hearing.  His claim does not entitle him to federal habeas corpus review or relief.

This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the State habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue in federal habeas.  *Id.* at 320; *see also*, *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also*, *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

Furthermore, Morgan is not entitled to a federal evidentiary hearing.  As discussed by the Supreme Court in *Cullen*, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2), which restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence.  *See Cullen*, 131 S. Ct. at 1400-01.  The Court in *Cullen* further recognized that where these factors are not met, evidence presented for the first time on federal habeas review

may not be considered on federal habeas review to address the merits of the claims under §
2254(d)(1).  *Id.*

Thus, the federal habeas court is limited to review of only the evidence and record before
the state courts that reviewed the claim at issue.  *See Cullen*, 131 S. Ct. at 1400; *Blue v. Thaler*, 665
F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*,  505 F. App'x 285, 295-96 (5th Cir. 2012);
*Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013).  In other
words, this Court does not consider evidentiary materials that were not first presented to the state
courts.

As presented in the following discussion, Morgan is not entitled to federal habeas relief
based on his ineffective assistance of counsel claims or the denial of his request for free transcripts.
He, therefore, has made no showing of entitlement to relief from his conviction by clear and
convincing evidence.  He also has not based his claim on a new, retroactive rule of law under the
provisions of § 2254(e)(2).  There is no basis to grant an evidentiary hearing in this case.

## VI.    <u>Effective Assistance of Counsel (Claim Nos. 1-4)</u>

Morgan alleges that his trial counsel was ineffective where he failed to adequately challenge
the sufficiency of the evidence presented by the State and failed to present reasonable evidence to
convince a reasonable jury that he was not guilty under the standards set forth in *Jackson v. Virginia*,
443 U.S. 307 (1979).  He argues that counsel failed to adequately challenge D.M.'s testimony which
was inconsistent, overstated the facts, and was not corroborated by any physical evidence.

The State in response argues that Morgan has not met the standards set forth in *Strickland*,
466 U.S. at 668, and he is not entitled to relief.

Morgan raised these arguments on post-conviction review in the state courts.  The Louisiana Fifth Circuit denied relief finding that Morgan's claim actually challenged the sufficiency of the State's evidence, a claim the Court had already rejected under *Jackson* on direct appeal.  This was the last reasoned opinion on the issue where the Louisiana Supreme Court denied relief without added reasons.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Under a broad reading, Morgan contends that his trial counsel was unable to adequately investigate the case because of the lack of physical, professional, and biological evidence and that he failed to adequately challenge D.M.'s contradictory and uncorroborated testimony at trial.  In addition, he claims that counsel failed to challenge the probable cause affidavit that led to his arrest.

The latter claim is based on a factually incorrect point.  As determined by the state courts, the probable cause affidavit was signed by Judge Robert Murphy on July 13, 2003.[48]  The state court's finding in that regard is proven by the record and entitled to deference.  Counsel would have had no basis to challenge the affidavit.  Counsel does not act unreasonably in failing to lodge a baseless motion or objection.  *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Morgan next claims that counsel failed to or was unable to conduct a proper investigation of the case.  "'A defendant who alleges a failure to investigate on the part of his counsel must allege

---

[48]St. Rec. Vol. 11 of 13, Probable Cause Affidavit, 7/13/03.

with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Under a broad reading, Morgan seems to argue that counsel had nothing to investigate because there was no evidence to support the crime. This concession contradicts the suggestion that counsel could have discovered exculpatory evidence had he investigated more diligently. In addressing his claim, the state courts reiterated the appellate court's resolve that in fact there was sufficient evidence to support the conviction under the standards set forth in *Jackson*. Morgan has not directly challenged the sufficiency of the evidence in this court or raised a cognizable question as to the propriety of the state courts' decision under *Jackson*.

Considering his claim under *Strickland*, he fairs no better here. The record demonstrates that Morgan's trial counsel challenged the evidence presented by the state both before and during trial. For example, counsel to no avail filed pretrial motions to exclude any inculpatory statements and to be allowed to question D.M. about her sexual activity with other males. Counsel also attempted

22

unsuccessfully to prevent the State from taking DNA swabs from Morgan and to be able to address evidence that D.M. was sexually active and could have contracted sexually transmitted diseases from other persons.  The fact that his defense strategy was unsuccessful does not mean that he acted deficiently or that he failed to adequately challenge the State's case.  *Strickland*, 466 U.S. at 689.

Furthermore, the record shows that counsel also vigorously cross-examined D.M. and relied upon the inconsistencies in her testimony when arguing to the jury.  Counsel's questioning of each of the State's witnesses clearly shows that he had investigated and prepared himself to challenge the circumstantial and potentially inconsistent evidence presented by the State.  *See Bower v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ("Counsel had a duty to garner the expertise necessary to cross examine [the state's expert].").  Based on the record, it was reasonable strategy for counsel to rely on cross-examination of the State's witnesses and argument to the jury especially where there was no real exculpatory evidence.

Morgan also has not presented any explanation or support for his contention that counsel should have investigated or pursued testimony or evidence from a child psychologist.  Counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  Furthermore, "[u]nless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision."  *See Bower*, 497 F.3d at 472.  Morgan has failed to present any basis to challenge counsel's trial strategy decisions.  *Dees*, 904 F.2d at 454-55.

For these reasons, Morgan has not shown that the state court's denial of relief was contrary to, or an unreasonable application of, *Strickland*. He is not entitled to relief on these issues.

**VII.**  **State Trial Court's Failure to Provide Free Transcripts (Claim No. 5)**

Morgan alleges that the state courts erred under Louisiana law in denying his request to be provided free copies of his trial and sentencing transcripts to assist in preparing for post-conviction review. The State argues that the claim is meritless under federal law and does not present a basis for federal habeas review.

Morgan sought free copies of trial and sentencing transcripts by motion in the state trial court which was denied for his failure to show a particularized need for the free copy as required by Louisiana law.[49] He included a similar request in his application for post-conviction relief which was denied for the same reason by the state trial court.[50] This ruling was specifically approved by the Louisiana Fifth Circuit and relief was also denied without reason by the Louisiana Supreme Court. *See Ylst.*

Federal habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review trial court errors brought under state law. *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Therefore, federal courts do not sit to review the propriety of state court errors, unless the proceedings violate due process such that the violation renders the state criminal proceeding fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Swarthout*, 131 S. Ct. at 861-62; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper

---

[49]St. Rec. Vol. 8 of 13, Trial Court Order, 1/10/12; Motion for Production of Trial and Sentencing Transcripts, 12/8/11.

[50]St. Rec. Vol. 8 of 13, Trial Court Order, 7/11/12.

only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To the extent Morgan bases his claim on Louisiana law, he has failed to state a cognizable claim for this Court to review.  Morgan also has not presented a federal constitutional error by the state courts in failing to provide him with free transcript copies and he has no cognizable federal due process claim.

The question of fundamental fairness in a criminal proceeding under the Due Process Clause presents a mixed question of law and fact.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).  Under the applicable AEDPA standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

The United States Supreme Court long has recognized that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states to provide indigent defendants with a trial transcript free of charge under certain circumstances to assure meaningful <u>appellate review</u>.  *Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956); *Britt v. North Carolina*, 404 U.S. 226 (1971); *Hardy v. United States*, 375 U.S. 277 (1964); *Kunkle v. Dretke*, 352 F.3d 980, 985 (5th Cir. 2003).  "However, a state is not 'obligated to automatically supply a complete verbatim transcript,' *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980), and a State need not waste its funds providing for free those parts of the transcript that are not 'germane to consideration of the appeal.' *Draper v. Washington*, 372 U.S. 487, 495 (1963)."  *Kunkle*, 352 F.3d at 985 (quotations and citations in original).  The federal courts have made it clear that a defendant does not have a right to "conduct 'fishing expeditions' to seek out possible errors at trial."  *Kunkle*, 352 at 985-86 (quoting *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir.1982)); *United States v. Watson*, 61 F. App'x 919, 2003 WL

1109766, at *1 (5th Cir. Feb. 19, 2003).  Instead, the defendant's entitlement turns on proving his inability to pay for the transcript, a particularized need for the transcript in connection with a specific proceeding, and that no alternative means of support for a claim other than the transcript would suffice.  *See Britt*, 404 U.S. at 227; *Watson*, 2003 WL 1109766, at *1.

In the instant case, it is significant that Morgan sought copies of his transcripts not for an appeal but instead to peruse in anticipation of the filing for post-conviction review.  He does not deny, and the record clearly shows, that Morgan was provided with meaningful <u>appellate</u> review of both his trial and his many sentencings.

Morgan also has not alleged any particular error that could or would be uncovered through the production of the transcripts.  Instead, he argues generally that he might have been able to uncover an error of constitutional magnitude had he been provided with the free transcripts by the state courts.  This is not sufficient to warrant relief under federal law.  *Kunkle*, at 986.  He also wholly ignores the fact that the state courts informed him that he could purchase the transcripts; only his requests for <u>free</u> copies were denied.

Nevertheless, Morgan has failed to establish that the state courts' denial of his requests for free transcripts was contrary to, or an unreasonable application of, federal law.  To the contrary, the standards relied upon by the state trial and appellate courts were the same as those required under the federal law cited above.  He did not and still has not established a particularized need for the transcripts to be provided to him without cost for him to "fish" for possible post-conviction claims.  Morgan is not entitled to relief on this issue.

## VIII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Ronald Morgan's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 5th day of May, 2014.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.